PETER WIRTH, AS PERSONAL REPRESENTATIVE
FOR THE ESTATE OF SANTIAGO SEBASTIAN ORTIZ,
SANDRA CORREA AND SANTIAGO ORTIZ,

      Plaintiffs,

v.

PHC-LAS CRUCES, INC., D/B/A MEMORIAL MEDICAL CENTER OF LAS CRUCES,
LIFEPOINT HEALTH, INC., LIFEPOINT RC, INC.,
VITTORIO TALEON, MD
IFEYINWA OBI, CNM,
LA CLINICA DE FAMILIA, INC.,
FIRST STEP CENTER, INC.,
UNITED STATES OF AMERICA, AND
LINDA VASQUEZ, R.N.

      Defendants.

## PLAINTIFFS' COMPLAINT FOR MEDICAL NEGLIGENCE, WRONGFUL DEATH, LOSS OF CONSORTIUM AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND REQUEST FOR 12-PERSON JURY TRIAL

Plaintiff Peter Wirth, in his representative capacity as Personal Representative of the

Estate of Santiago Sebastian Ortiz, deceased, and Plaintiffs Sandra Correa and Santiago Ortiz,

together bring their Complaint following the fatal personal injuries suffered by their infant child

Santiago Sebastian Ortiz during birth on August 12, 2017, and for which Defendants are liable.

For their Complaint, Plaintiffs state:

### INTRODUCTION

1.     Sandra Correa went to Defendant PHC-Las Cruces, Inc., d/b/a Memorial Medical

Center of Las Cruces (herein "MMC Hospital")  in Las Cruces, New Mexico on August 11, 2017,

and for the delivery of her third child.  Mrs. Correa had obtained regular prenatal care, and her

son Santiago was due on September 18, 2017.

2.      Defendant Ifeyinwa Obi, a certified nurse midwife working at Defendant MMC Hospital, was then assigned to attend to Ms. Correa.

3.      By assigning Ms. Correa's case to Defendant Obi Defendant MMC Hospital created a reasonable belief in Plaintiffs that Defendant Obi was an employee or agent of MMC Hospital.

4.      Between 7:27 p.m. on August 11, and 6:06 a.m. on August 12, Defendant Obi ordered and discontinued the use of Pitocin, monitored but failed to appreciate the vital signs of both Sandra and her unborn son, and coached Ms. Correa through labor and delivery.  Defendant Obi also unsuccessfully attempted to perform pelvic examinations, and repeatedly asked for assistance from MMC Hospital nurses in performing her tasks.

5.      In the over 11 hours Ms. Correa was in labor, MMC Hospital's nursing staff charted repeated patterns of fetal distress evident by the deceleration patterns in the infant fetal heartrate.

6.      Defendant Obi and MMC Hospital nurses failed to timely request the assistance of an obstetrician or other physician specialist.  Ms. Correa and Santiago Ortiz, the infant's father, were never advised of the need for an obstetrician or other physician specialist to attend to the labor and delivery needs of Ms. Correa.

7.      Defendant Obi and the MMC Hospital nurses and other health care providers did not timely present or recommend cesarean delivery options to Ms. Correa and her husband Santiago Ortiz.

8.      At approximately 5:06 a.m. on the morning of August 12, Defendant Obi left Ms. Correa to assist with a pregnancy delivery in the emergency department of MMC Hospital, and

again presented a reasonable belief to Plaintiffs that Defendant Obi was MMC Hospital's employee or agent.

9.      Defendant Obi returned to Sandra Correa at 5:20 a.m., read the fetal monitor strip, and then for the first time requested the assistance of a physician.

10.      Defendant Dr. Vittorio Taleon arrived to attend to Ms. Correa's delivery 46 minutes later.

11.      By undertaking and assuming labor and delivery care for Ms. Correa, Dr. Taleon created a reasonable belief to Plaintiffs that Dr. Taleon was MMC Hospital's employee or agent.

12.      Prior to 6:00 a.m. on August 12 Ms. Correa's infant son Santiago was monitored by ultrasound recording fetal heartrate.

13.      In the course of Ms. Correa's labor and her infant son Santiago's delivery, Dr. Taleon identified shoulder dystocia.

14.      Unable to release Santiago's shoulder, Defendant Dr. Taleon then attempted a vaginal delivery by repeatedly applying a vacuum extraction device to Santiago's head, and to pull Santiago for delivery.

15.      At 6:34 a.m. Santiago's head was delivered, however, six minutes later Defendant Dr. Taleon was still unable to make progress with delivery, and called for an emergency caesarean delivery.  Ms. Correa was rushed into the operating room with only Santiago's head delivered.

16.      At 6:53 a.m. Santiago was delivered by a caesarean procedure in the operating room, but was pulseless and without respiration.

17.      Resuscitation efforts to revive Santiago were unsuccessful and he was pronounced

dead at 7:14 a.m.

18.     On August 14, 2017, the findings of the Office of the Medical Investigator (OMI) by an autopsy identified the birthing trauma Santiago suffered to include two scalloped fractures of his skull, occipital calvarium, subscalpular, and subgaleal hemorrhage, and acute subarachnoid hemorrhage.  The autopsy also identified other blunt extremity traumas, lacerations and contusions.

19.     The OMI autopsy identified the cause of Santiago's death to be complications of labor and delivery.

## JURISDICTION, VENUE AND PARTIES

20.     Plaintiff Peter Wirth is a licensed New Mexico attorney and a resident of Santa Fe, New Mexico.  On August 15, 2019, Mr. Wirth was appointed Personal Representative of the Estate of Santiago Sebastian Ortiz.  Mr. Wirth's appointment was made pursuant to the New Mexico Wrongful Death Act.

21.     Plaintiff Sandra Correa is the mother of Santiago, deceased, and is a resident of Hatch, New Mexico.

22.     Plaintiff Santiago Ortiz (Mr. Ortiz) is the father of Santiago Sebastian Ortiz, deceased, and is the husband of Sandra Correa.  Mr. Ortiz is also a resident of Hatch, New Mexico.

23.     The acts and omissions which are the basis of this Complaint occurred on August 11, 2017, and August 12, 2017, in Las Cruces, New Mexico.

24.     In August of 2017, Defendant PHC-Las Cruces, Inc., d/b/a Memorial Medical Center of Las Cruces was a New Mexico corporation, which owned and operated a hospital

facility in Las Cruces, New Mexico, doing business as Memorial Medical Center (herein also MMC Hospital).

25.     Defendant PHC-Las Cruces, Inc. may be served by its registered agent at Kemp Smith, LLP, 3800 E. Lohman Avenue, Ste. C, Las Cruces, NM  88011-8273.

26.     Defendant PHC-Las Cruces, Inc. has identified itself as a "qualified health care provider", and in August of 2017, under the New Mexico Medical Malpractice Act.

27.     If Defendant PHC-Las Cruces, Inc. was in actuality a "qualified healthcare provider" under the New Mexico Medical Malpractice Act in August of 2017, all statutory pre-filing requirements of the Act for Defendant PHC-Las Cruces, Inc. have been satisfied.

28.     In August of 2017, Defendant PHC-Las Cruces, Inc., was a subsidiary of Defendant LifePoint Health, Inc.

32.     In August of 2017, Defendant LifePoint Health, Inc. exercised certain controls over operations, staffing, administration, employment, training, technology, procedures and policies for Defendant PHC-Las Cruces, Inc., d/b/a MMC Hospital.

33.     Defendant LifePoint Health, Inc. is a foreign corporation organized under laws of the State of Tennessee, and in August of 2017, was transacting business at MMC Hospital and elsewhere in the State of New Mexico.

34.     Defendant LifePoint Health, Inc. may be served with process upon an authorized person at its corporate office, 330 Seven Springs Way, Brentwood, TN  37027, or by its registered agent: CT Corporation System, 800 South Gay Street, Ste. 2021, Knoxville, TN 3729-9710.

35.     In August of 2017, Defendant LifePoint Health, Inc. was not a "qualified healthcare provider" under the New Mexico Medical Malpractice Act.

36.     In August of 2017, Defendant LifePoint RC, Inc. was a foreign corporation organized under laws of the State of Delaware, and was transacting business in New Mexico at MMC Hospital and elsewhere in the State of New Mexico.

37.     Defendant LifePoint RC, Inc., like Defendant PHC-Las Cruces, Inc., is also a subsidiary of Defendant LifePoint Health, Inc.

38.     Defendant LifePoint RC, Inc. may be served with process upon an authorized person at its principal office, 330 Seven Springs Way, Brentwood, TN  37027, or by its registered agent in New Mexico: CT Corporation System, 206 S. Coronado Avenue, Espanola, NM  87532-2792.

39.     In August of 2017, Defendant LifePoint RC, Inc. was not a "qualified health care provider" under the New Mexico Medical Malpractice Act.

40.     Defendant LifePoint Health, Inc., as the parent corporation of Defendant LifePoint RC, Inc., and as the parent corporation of Defendant PHC-Las Cruces, Inc., d/b/a Memorial Medical Center, and acting through its subsidiary corporations, derives substantial economic benefits from its business activities in the State of New Mexico, and maintains intentional, substantial, continuous and systematic contacts within New Mexico exercised in the control, operations, management, administration, staffing, procedures and policies of MMC Hospital.

41.     Defendant LifePoint Health, Inc., Defendant LifePoint RC, Inc., and Defendant PHC-Las Cruces, Inc., d/b/a Memorial Medical Center act as alter egos for each other.  Defendant LifePoint Health, Inc. and Defendant LifePoint RC, Inc. are collectively referred to herein as "Defendant LifePoint".

42.     In August of 2017, Defendant Vittorio Taleon, M.D. was a licensed obstetrician

practicing in Las Cruces and Dona Ana County, New Mexico.

43.     In August of 2017, Defendant Dr. Taleon was not a "qualified health care provider" under the New Mexico Medical Malpractice Act.

44.     In August of 2017, Defendant Dr. Taleon practiced medicine as an employee, agent or apparent agent of, Defendant PHC-Las Cruces, Inc., d/b/a MMC Hospital.

45.     In August of 2017, Defendant Dr. Taleon practiced medicine as an employee, agent or apparent agent of, Defendant La Clinica, Inc.

46.     In August of 2017, Defendant Dr. Taleon practiced medicine as an employee, agent or apparent agent of, Defendant First Step Center, Inc.

47.     Defendant Dr. Taleon may be served with process at 385 Calle de Alegra, Las Cruces, New Mexico 88005, or wherever he may be found.

48.     In August of 2017, Defendant La Clinica de Familia, Inc. (herein "Defendant La Clinica, Inc.") was a New Mexico corporation offering and providing medical services at its principal place of business, 385 Calle de Alegra, Bldg. A, Las Cruces, New Mexico 88005.

49.     In August of 2017, Defendant La Clinica, Inc. was not a "qualified health care provider" under the New Mexico Medical Malpractice Act.

50.     Defendant La Clinica, Inc. may be served with process by its registered agent Jesus Prieto at 385 Calle de Alegre, Building A, Las Cruces, NM 88005.

51.     Alternatively, Defendant La Clinica, Inc. may assert that in August of 2017 it was a Federally Qualified Health Care Center.

52.     Alternatively, if Defendant La Clinica, Inc. asserts that in August of 2017 it was a Federally Qualified Health Care Center, La Clinica, Inc. , it may assert it operates as an agency of

the United States Government.

53.     Upon information and belief the United States of America, through the federal government, directed certain operations and provided partial funding of Defendant La Clinica, Inc. in August of 2017.

54.     Alternatively asserted, if La Clinica, Inc. and First Step, Inc. were Federally Qualified Health Centers  in August of 2017, the United States of America was a principal or is otherwise liable for these Defendants as agents, respondeat superior, or other vicarious or statutory liability for these Defendants.

55.     In August of 2017, Defendant Ifeyinwa Obi was a nurse midwife practicing in Las Cruces and Dona Ana County, New Mexico.

56.     In August of 2017, Defendant Obi was not a "qualified health care provider" under the New Mexico Medical Malpractice Act.

57.     In August of 2017, Defendant Obi was a nurse midwife employed by, or an agent or apparent agent of, Defendant PHC-Las Cruces, Inc., d/b/a MMC Hospital.

58.     In August of 2017, Defendant Obi was a nurse midwife employed by, or an agent or apparent agent of, Defendant La Clinica, Inc.

59.     In August of 2017, Defendant Obi was a nurse midwife employed by, or an agent or apparent agent of, Defendant First Step Center, Inc.

60.     Defendant Obi may be served with process at 1729 University Avenue S, Apt. E30, Fairbanks, Alaska, 99709-4937, or wherever she may be found.

61.     In August of 2017, Defendant First Step Center, Inc. (herein "Defendant First Step, Inc.") was a domestic New Mexico non-profit corporation.

62.     In August of 2017, Defendant First Step, Inc. was not a "qualified health care provider" under the New Mexico Medical Malpractice Act.

63.     Defendant First Step Center, Inc. is presently not in good standing, and its corporate status is currently reported by the New Mexico Secretary of State to have been revoked.

64.     Alternatively, in 2017 Defendant First Step, Inc. was a dba for Defendant La Clinica, Inc.

65.     Alternatively, in 2017 Defendant First Step, Inc. and Defendant La Clinica, Inc. were alter-egos of each other.

66.     Alternatively, Defendant First Step, Inc. may assert it was a Federally Qualified Health Care Center in August of 2017.

67.     Alternatively and upon information and belief, Defendant First Step, , Inc. may assert that as a Federally Qualified Health Care Center, La Clinica, Inc. operates as an agency of the United States Government.

68.     Defendant First Step, Inc. may be served with process by its registered agent, Reta K. Warren, at its principal place of business 390 Calle de Alegra, Las Cruces, NM  88005.

69.     In August of 2017, Defendant Linda Vasquez, RN was a registered nurse employed at MMC Hospital.

70.     In August of 2017, Defendant Linda Vasquez, RN, was not a qualified health care provider under the New Mexico Medical Malpractice Act, §41-5-1 through §41-5-29, NMSA 1978.

71.     Linda Vasquez, RN may be served with process at 2450 S. Telshor Blvd, Las Cruces, New Mexico 88011, or wherever she may be found.

72.     Jurisdiction of the parties and subject matter are proper in this Court.

73.     Venue is proper before this Court pursuant to §38-3-1 NMSA 1978.

## FACTUAL ALLEGATIONS

74.     On August 11, 2017, Sandra Correa presented herself at Defendant MMC Hospital at approximately 7:01 p.m., and 34.4 weeks pregnant.

75.     Before August 11, 2017, Ms. Correa had two children by vaginal births, and delivered without complications.

76.     Before August 11, 2017, Sandra Correa received prenatal care at Defendant La Clinica, Inc.

77.     Ms. Correa's pregnancy in 2017 was complicated by diagnosed gestational diabetes, for which she received prescribed prenatal care and medication.

78.     Based upon her prenatal care and ultrasound monitoring, Ms. Correa was identified by a doctor at Defendant La Clinica, Inc., Dr. Jose L. Gonzales, to be at increased risk for birth injury without the appropriate level of medical attention to her pregnancy, labor and delivery.

79.     Ms. Correa was never advised by her physicians or health care providers to elect or consent to a cesarean delivery of her infant son Santiago.

80.     When Ms. Correa arrived at MMC Hospital on August 11, 2017, she reported to Obstetrics Triage that her amniotic membranes had ruptured at approximately 5:50 p.m. that same evening, or just over an hour earlier.

81.     When Ms. Correa was admitted to MMC Hospital, a fetal monitor was placed on Santiago which recorded the infant was normally reactive and stable.

82.     Upon admission to MMC Hospital Sandra Correa's medical care was initially assumed under Defendant Obi, a certified nurse midwife.  Defendant Obi first saw Ms. Correa at 7:27 p.m. on August 11, 2017.

83.     Defendant Obi was assigned to care for Ms. Correa at Defendant MMC Hospital, and to perform delivery of Ms. Correa's son, however Defendant Obi was not a provider chosen or selected by Ms. Correa upon her presentation or admission at MMC Hospital.

84.     At the time Defendant Obi was assigned to direct the care of Ms. Correa, and the delivery of Ms. Correa's son Santiago, MMC Hospital created a reasonable belief that Defendant Obi was MMC Hospital's employee, agent or apparent agent.

85.     At 7:27 p.m. on August 11, Sandra Correa received a pelvic examination, and was determined by Defendant Obi to be fully dilated at 10.0 cm.

86.     At 7:28 p.m. on August 11, Sandra Correa received a pelvic examination, and was determined by Linda Vasquez, RN to be fully dilated at 10.0 cm.

87.     At 8:51 p.m. Sandra was administered Pitocin.  The MMC Hospital chart does not document who issued this order.

88.     At 10:50 p.m. the Pitocin being administered to Sandra was ordered to be decreased from 2 units to 1 unit (milliunits).  Here again the MMC Hospital chart does not identify who issued this revised order.

89.     At 1:58 a.m. on August 12, Defendant Obi unsuccessfully attempted a sterile vaginal exam (SVE) of Ms. Correa.

90.     At 2:10 a.m. Defendant Obi requested that Krystal Stephens, RN, perform the SVE of Ms. Correa.  RN Stephens performed the vaginal exam and determined Ms. Correa to be dilated at 6 cm.

91.     Following Sandra's admission to MMC Hospital's Labor and Delivery unit, Sandra and Santiago were then monitored throughout the evening hours of August 11, and continuing into and through the early morning hours of the following day, August 12, 2017.

92.     At 2:20 a.m. Defendant Obi unsuccessfully attempted to place a fetal scalp electrode on Santiago.

93.     At 3:04 a.m. Defendant Obi ordered an increase to the Pitocin being administered Sandra.  Two minutes later, at 3:06 a.m., this Pitocin order was discontinued.

94.     At 3:09 a.m. Defendant Obi performed an SVE, and again determined Sandra to be fully dilated at 10 cm, and 100% effaced.

95.     At 3:22 a.m. Defendant Obi coached and encouraged Sandra's pushing efforts with contractions.

96.     At 3:55 a.m. Defendant Obi then ordered Ms. Correa to rest and "labor down".

97.     Between 1:00 a.m. and 6:40 a.m., in the early hours of morning on August 12, the fetal monitor on Santiago recorded a series of fetal deceleration patterns described at times as repeated, variable and prolonged, and occurring at least 15 times.

98.     At 5:06 a.m. Defendant Obi left Sandra's birthing room to attend to a delivery in the emergency department of MMC Hospital.

99.     At 5:20 a.m. Defendant Obi returned to Sandra's room and care, read Santiago's fetal monitor strip, and only then for the first time Defendant Obi requested the assistance of an attending physician on call.

100.    Prior to 5:20 a.m. on August 12, Defendant Obi had not reacted to the series of fetal deceleration patterns by requesting consultation or assistance from an obstetrician or medical doctor.

101.    Prior to 5:20 a.m. on August 12, MMC Hospital nurses had not reacted to the series of fetal deceleration patterns by requesting consultation or assistance from an obstetrician or medical doctor.

102.    At 6:06 a.m. Defendant Dr. Taleon arrived in Ms. Correa's room 46 minutes after he was called by Defendant Obi.

103.    At 6:12 a.m. Defendant Dr. Taleon ordered Pitocin be resumed for Sandra's labor.

104.    At 6:17 a.m. the Neonatal Intensive Care Unit (NICU) of MMC Hospital was called in to assist with Sandra's labor and delivery.

105.    At a time indeterminate from the MMC Hospital records, Dr. Taleon identified and announced Santiago was presenting with shoulder dystocia.

106.    At 6:22 a.m. Dr. Taleon continued his efforts to deliver Santiago vaginally by applying a vacuum extraction device to Santiago's head.  At 6:24 the vacuum extraction device was off.

107.    At 6:29 a.m. Dr. Taleon ordered an increase in the Pitocin being administered Sandra.

108.     At 6:29 a.m. the vacuum extraction device was on Santiago's head.   At 6:32 a.m. the vacuum extraction device was off.

109.     At 6:33 a.m. the vacuum extraction device was on Santiago's head.

110.     At 6:34 a.m. Santiago's head was delivered vaginally.

111.     At 6:35 the vacuum extraction device was off Santiago's head.

112.     At 6:36 a.m. Defendant Dr. Taleon performed an episiotomy in his unsuccessful effort to deliver Santiago vaginally.

113.     At 6:40 a.m. Defendant Dr. Taleon abandoned his unsuccessful efforts to deliver Santiago vaginally, and ordered a STAT caesarean delivery.

114.     Prior to 6:40 a.m. on August 12, and on 32 occasions, Santiago's heart rate had been monitored by external ultrasound and charted.  Santiago's heart rate remained "moderately variable" in relation to his baseline heartrate.

115.     Between 3:00 a.m. and 6:40 a.m. on August 12, however, and on 7 occasions, Santiago's heart rate had been monitored and charted with fetal heart rate decelerations described as late, variable and prolonged.

116.     At 6:40 a.m. what would be the last fetal heart rate assessment of Santiago was charted.  At that time Santiago's fetal heart rate remained moderately within his baseline heart rate.

117.     At 6:45 a.m. Sandra was rushed into the operating room with only Santiago's head delivered.

118.     Santiago was delivered by caesarian section in the operating room at 6:53 a.m.

119.    At his delivery Santiago was pulseless and without spontaneous respiration. Santiago was blue in color and was entirely non-responsive.

120.    In an effort to resuscitate Santiago, he was intubated by endotracheal tube and chest compressions and chemical resuscitations were administered.  All failed.

121.    Santiago was pronounced dead at 7:14 a.m. by Dr. Roman Alvarez.

122.    Sandra Correa was in her second stage labor for a total of 11 hours and 40 minutes, from 7:27 p.m. on August 11 fully dilated, to 6:40 a.m. on August 12.

123.    On August 14, 2017, an autopsy of Santiago was performed by Christopher Liverman, MD, PhD, and by Ian Paul, MD, both with the Office of the Medical Investigator (OMI).

124.    The OMI autopsy of Santiago identified findings of severe trauma including two scalloped fractures of the infant's skull.

125.    The OMI autopsy also identified multiple traumatic brain injuries including occipital calvarium, subscalpular, and subgaleal hemorrhage, and identified acute subarachnoid hemorrhage.

126.    Santiago's autopsy also identified multiple other blunt extremity traumas, lacerations and contusions.

127.    The OMI autopsy pathologists concluded the cause of Santiago's death to be "complications of labor and delivery".

## COUNT I
## MEDICAL NEGLIGENCE OF DEFENDANT IFEYINWA OBI, CNM

128.   Plaintiffs hereby incorporate the preceding contentions by reference.

129.   In August of 2017, Defendant Ifeyinwa Obi, held herself out to Plaintiffs as a certified nurse midwife possessing the skill and qualifications to deliver Santiago, and to care for the labor and delivery of Sandra Correa.

130.   Defendant Obi owed Plaintiffs a duty to possess and apply the knowledge, skill and care ordinarily used by a reasonably well-qualified nurse midwife, performing labor and delivery procedures, and under the circumstances present and the locality involved.

131.   Defendant Obi negligently failed to apply the ordinary knowledge, skill and care required of a nurse midwife in the labor and delivery of Santiago, and did so in multiple ways including without limitation:

   a)   Defendant Obi negligently failed to appreciate and respond to Ms. Correa's prolonged and delayed second stage of labor, and the non-progression of labor and delivery, evident from fetal ultrasound monitoring;

   b)   Defendant Obi negligently failed to anticipate and appreciate evident complications attendant to the progression and lack of progression in Sandra Correa's delivery of Santiago;

   c)   Defendant Obi negligently failed to appreciate, assess, evaluate, respond to and treat Sandra Correa and Santiago to the required standard of care for an infant in fetal distress;

   d)   Defendant Obi negligently failed to timely advise Sandra Correa to elect a caesarean delivery;

   e)   Defendant Obi negligently failed to request the necessary assistance from, and consultation by, an obstetrician or other qualified specialist, and for assessment of a caesarean delivery of Santiago;

f)   Defendant Obi negligently failed to tell Sandra Correa that a medical doctor and obstetrician was needed for Sandra Correa and Santiago to receive proper treatment;

g)   Defendant Obi negligently failed to timely request or order a caesarean delivery of Santiago;

h)   Defendant Obi negligently failed to order, administer, continue and monitor the Pitocin received by Sandra Correa during progression of her labor;

i)   Defendant Obi negligently caused or contributed to the birthing trauma injuries suffered by Santiago including mechanical injuries caused by use of a vacuum extraction device applied to Santiago's head;

j)   Defendant Obi negligently caused or contributed to the blunt head trauma and occipital calvarium fractures Santiago suffered during his birth;

k)   Defendant Obi negligently caused or contributed to acute subarachnoid hemorrhage Santiago suffered during his birth;

l)   Defendant Obi negligently caused or contributed to subscapular and subgaleal hemorrhage Santiago suffered during his birth;

m)   Defendant Obi negligently caused or contributed to blunt extremity traumas, laceration to right axilla, and contusions to the left and right upper extremities, all which Santiago suffered during his birth; and

n)   Defendant Obi negligently caused or contributed to blunt chest traumas, contusions and abrasions, all which Santiago suffered during his birth.

132.   The negligent acts and omissions of Defendant Obi were a cause of physical injuries, and pain and suffering, experienced by Santiago during birth.

133.   The negligent acts and omissions of Defendant Obi were a cause of Sebastian's death.

134.   The negligent acts and omissions of Defendant Obi were a cause of the loss of consortium experienced by Plaintiffs Sandra Correa and Santiago Ortiz as the result of their son Santiago's death.

135.    The negligent acts and omissions of Defendant Obi were a cause of extreme emotional distress experienced by Plaintiffs Sandra Correa and Santiago Ortiz during the delivery of their son Santiago.

136.    At all times relevant to her care of Sandra Correa and the delivery of Santiago, Defendant Obi was acting in the course and scope of her employment with, or as an agent or apparent agent of, Defendant MMC Hospital.

137.    At all times relevant to her care of Sandra Correa and the delivery of Santiago, Defendant Obi was acting in the course and scope of her employment with, or as an agent or apparent agent of, Defendant La Clinica, Inc.

138.    At all times relevant to her care of Sandra Correa and the delivery of Santiago, Defendant Obi was acting in the course and scope of her employment with, or as an agent or apparent agent of, Defendant First Step, Inc.

139.    At all times relevant to her care of Sandra Correa and the delivery of Santiago, Defendant Obi was acting in the course and scope of her employment with, or as an agent or apparent agent of, Defendant LifePoint Health, Inc.

140.    At all times relevant to her care of Sandra Correa and the delivery of Santiago, Defendant Obi was acting in the course and scope of her employment with, or as an agent or apparent agent of, Defendant LifePoint RC, Inc.

WHEREFORE Plaintiffs request entry of a judgment for damages against Defendant Ifeyinwa Obi, and for:

        (a)    physical injuries, pain and suffering endured by Sandra Correa;

        (b)    physical injuries, pain and suffering endured by Santiago;

    (c)    wrongful death damages of the Estate of Santiago Sebastian Ortiz including:
- i.   expenses for reasonable and necessary medical treatment,
- ii.  funeral and burial expenses, and
- iii. the value of loss of life of Santiago;

    (d)    the negligent infliction of extreme emotional distress experienced by Plaintiffs;

    (e)    the loss of consortium experienced by Plaintiffs including their loss of society, guidance, companionship and parent-child relations;

    (f)    recoverable court costs;

    (g)    pre- and post-judgment interest; and

    (h)    such other relief the Court deems just.

## COUNT II
## MEDICAL NEGLIGENCE OF DEFENDANT VITTORIO TALEON, M.D.

141.    Plaintiffs hereby incorporate the preceding contentions by reference.

142.    In August of 2017, Defendant Dr. Vittorio Taleon, M.D, held himself out as medical specialist in the field of obstetrics, and in the practice of performing labor and delivery medical procedures in Las Cruces, New Mexico.

143.    Defendant Dr. Taleon owed Plaintiffs Sandra Correa, Santiago Ortiz, and infant Santiago, the duty to possess and apply the knowledge, skill and care ordinarily used by a reasonably well-qualified physician specialized in obstetrics, and practicing this specialized field of medicine including labor and delivery medical procedures, and under similar circumstances for the locality involved.

144.    Defendant Dr. Taleon negligently failed to apply the ordinary knowledge, skill and care required in the labor and delivery of Plaintiff Sandra Correa's son Santiago, and did so in multiple ways including without limitation:

a) Defendant Dr. Taleon negligently failed to appreciate and respond to Ms. Correa's prolonged and delayed second stage of labor, and the non-progression of labor and delivery, evident from fetal ultrasound monitoring;

b) Defendant Dr. Taleon negligently failed to anticipate and appreciate evident complications attendant to the progression and lack of progression in Sandra Correa's delivery of Santiago;

c) Defendant Dr. Taleon negligently failed to appreciate, assess, evaluate, respond to and treat Sandra Correa, and Santiago, to the required standard of care for an infant in fetal distress;

d) Defendant Dr. Taleon negligently failed to timely advise Sandra Correa to elect a caesarean delivery;

e) Defendant Dr. Taleon negligently failed to timely request or order a caesarean delivery of Santiago;

f) Defendant Dr. Taleon negligently failed to order, administer and monitor the Pitocin received by Sandra Correa during progression of her labor;

g) Defendant Dr. Taleon negligently caused or contributed to the birthing trauma injuries suffered by Santiago including mechanical injuries caused by use of a vacuum extraction device applied to Santiago's head, and which device was Defendant Dr. Taleon's responsibility to manage and control;

h) Defendant Dr. Taleon negligently caused or contributed to the blunt head trauma and occipital calvarium fractures Santiago suffered during his birth;

i) Defendant Dr. Taleon negligently caused or contributed to acute subarachnoid hemorrhage Santiago suffered during his birth;

j) Defendant Dr. Taleon negligently caused or contributed to subscapular and subgaleal hemorrhage Santiago suffered during his birth;

k) Defendant Dr. Taleon negligently caused or contributed to blunt extremity traumas, laceration to right axilla, and contusions to the left and right upper extremities, all which Santiago suffered during his birth; and

l) Defendant Dr. Taleon negligently caused or contributed to blunt chest traumas, contusions and abrasions, all which Santiago suffered during his birth.

145.    The negligent acts and omissions of Defendant Dr. Taleon were a cause of physical injuries, and pain and suffering, experienced by Santiago during birth.

146.    The negligent acts and omissions of Defendant Dr. Taleon were a cause of Santiago's death.

147.    The injuries to and death of Santiago were proximately caused by the negligent use of the vacuum extraction device, which was Defendant Dr. Taleon's responsibility to manage and control.

148.    The injuries to and death of Santiago were proximately caused by the negligent use of the vacuum extraction device, and were of a kind which does not ordinarily occur in the absence of negligence by a person in control of the vacuum extraction device.

149.    Defendant Dr. Taleon's control of the vacuum extraction device used to deliver Santiago is circumstantial evidence of medical negligence, and *res ipsa loquitur*.

150.    The negligent acts and omissions of Defendant Dr. Taleon were a cause of the loss of consortium experienced by Plaintiffs Sandra Correa and Santiago Ortiz as the result of their son Santiago's death.

151.    The negligent acts and omissions of Defendant Dr. Taleon were a cause of the extreme emotional distress experienced by Plaintiffs Sandra Correa and Santiago Ortiz during and perceiving the delivery of their son Santiago.

152.    At all times relevant to his care of Sandra Correa and the delivery of Santiago, Defendant Dr. Taleon was acting in the course and scope of his employment with, or as an agent or apparent agent of, Defendant MMC Hospital.

153.    At all times relevant to his care of Sandra Correa and the delivery of Santiago,

Defendant Dr. Taleon was acting in the course and scope of his employment with, or as an agent or apparent agent of, Defendant La Clinica, Inc.

154.    At all times relevant to his care of Sandra Correa and the delivery of Santiago, Defendant Dr. Taleon was acting in the course and scope of his employment with, or as an agent or apparent agent of, Defendant First Step, Inc.

155.    At all times relevant to her care of Sandra Correa and the delivery of Santiago, Defendant Dr. Taleon was acting in the course and scope of his employment with, or as an agent or apparent agent of, Defendant LifePoint Health, Inc.

156.    At all times relevant to his care of Sandra Correa and the delivery of Santiago, Defendant Dr. Taleon was acting in the course and scope of his employment with, or as an agent or apparent agent of, Defendant LifePoint RC, Inc.

WHEREFORE Plaintiffs request entry of a judgment for damages against Defendant Dr. Vittorio Taleon, and for:

(a)    physical injuries, pain and suffering endured by Sandra Correa;

(b)    physical injuries, pain and suffering endured by Santiago;

(c)    wrongful death damages of the Estate of Santiago Sebastian Ortiz including:
      i.   expenses for reasonable and necessary medical treatment,
      ii.  funeral and burial expenses, and
      iii. the value of loss of life of Santiago;

(d)    the negligent infliction of extreme of emotional distress experienced by Plaintiffs;

(e)    the loss of consortium experienced by Plaintiffs including their loss of society, guidance, companionship and parent-child relations;

(f)    recoverable court costs;

(g)    pre- and post-judgment interest; and

(h)    such other relief the Court deems just.

## COUNT III
## NEGLIGENCE OF DEFENDANT PHC-LAS CRUCES, INC.
## D/B/A DEFENDANT MEMORIAL MEDICAL CENTER

157.    Plaintiffs hereby incorporate the preceding contentions by reference.

158.    By holding itself out to the public as a hospital providing emergency medical services, and in offering and providing Sandra Correa and Santiago with medical care, healthcare providers, nurse midwife, nursing staff, treatment facilities, specialized medical equipment, and other labor and delivery medical services, Defendant PHC-Las Cruces, Inc., d/b/a Defendant MMC Hospital owed Plaintiffs Sandra Correa, Santiago Ortiz and Santiago Sebastian Ortiz, a duty to use ordinary care to provide, staff, employ, credential, supervise, train, and retain well-qualified physicians, nurse midwives, nursing staff, and other healthcare providers, and to provide healthcare facilities, necessary to deliver Santiago for Sandra Correa, necessary to have delivered a healthy and fully viable infant child, and necessary to have prevented the death of Santiago.

159.    By holding itself out to the public as a hospital providing emergency medical services, and in offering and providing Sandra Correa and Santiago with medical care, healthcare providers, nurse midwife, nursing staff, treatment facilities, specialized medical equipment, and other labor and delivery medical services, Defendant PHC-Las Cruces, Inc., d/b/a Defendant MMC Hospital owed Plaintiffs Sandra Correa, Santiago Ortiz and Santiago Sebastian Ortiz, a duty to possess and apply the knowledge and to use the skill and care ordinarily used in reasonably well-operated hospitals under similar circumstances, and giving due consideration to the locality involved.

160.    Defendant MMC Hospital negligently failed to provide, staff, schedule, employ, credential, supervise, train, and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers operating from and within the MMC Hospital, required by labor and delivery for Sandra Correa and for infant Santiago, as were required to have delivered a healthy and fully viable infant child, and to have prevented Santiago's death.

161.    Defendant MMC Hospital negligently failed to provide, staff, schedule, employ, credential, supervise, train, and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers required by labor and delivery for Sandra Correa and required to have prevented Santiago's death.

162.    Defendant MMC Hospital negligently failed to staff, schedule, employ, credential, supervise, train and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers required by labor and delivery for Sandra Correa and Santiago, and did so in multiple ways including without limitation:

    a)    Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently failed to staff MMC Hospital with the qualified and competent health care providers to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

    b)    Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently failed to schedule MMC Hospital staffing with qualified and competent health care providers to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

    c)    Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently failed to schedule MMC Hospital with a qualified, experienced and competent nurse midwife to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

d)  Defendant MMC Hospital, acting by and through its employees, agents or apparent agents, negligently failed to respond to Ms. Correa's prolonged and delayed second stage of labor and delivery, and to evident fetal distress presented by Santiago from ultrasound monitoring and fetal heartrate;

e)  Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently failed to appreciate and timely respond to fetal distress experienced by Santiago and evident by recurrent and prolonged fetal heartrate deceleration patterns evident by ultrasound monitoring;

f)  Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently failed to timely advise Sandra Correa for caesarean option to deliver Santiago;

g)  Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently failed to timely order a caesarean delivery of Santiago;

h)  Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently failed to implement and assure labor and delivery procedures for orders in the administration of Pitocin;

i)  Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently caused birthing trauma to Santiago by use of MMC Hospital equipment and a vacuum extraction device and procedure given Santiago's condition and development;

j)  Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently failed to anticipate and appreciate complications attendant to Plaintiff Sandra Correa's pregnancy and to the birth of Santiago;

k)  Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently caused or contributed to blunt head trauma and occipital calvarium fractures suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

l)  Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently acute subarachnoid hemorrhaging suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

m)  Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently caused subscapular and subgaleal hemorrhaging suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

n)   Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently caused the blunt extremity traumas, laceration to right axilla, and contusions to the left and right upper extremities suffered by Santiago during birth;

o)   Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently caused the blunt chest traumas, contusions and abrasions suffered by Santiago during birth; and

p)   Defendant MMC Hospital, by and through its employees, agents or apparent agents, negligently failed to appreciate and respond to Sandra Correa and Santiago to the required standard of care for the evident infant in fetal heartrate distress and the prolonged second stage of labor.

163.   The acts and omissions of Defendant MMC Hospital, acting through its employees, agents and apparent agents, were a proximate cause of Santiago's personal injuries, pain and suffering, and death, as well as the personal injuries, pain and suffering and emotional trauma suffered by Sandra Correa and Santiago Ortiz as parents, and of Plaintiffs' other damages.

164.   At all times relevant to the labor and delivery of Sandra Correa and Santiago, Defendant MMC Hospital, exercised control over its employees, agents, apparent agents, physicians, nurse midwives, nurses, technicians and other hospital staff involved in that care.

165.   In the labor and delivery of Sandra Correa and Santiago, the negligent acts or omissions of Defendant MMC Hospital, its employees, agents, apparent agents, physicians, nurse midwives, nurses, technicians and other hospital staff occurred while said persons were acting in the course and scope of their employment with, or as agents or apparent agents of, Defendant MMC Hospital.

166.   In the labor and delivery of Sandra Correa and Santiago, Defendant MMC Hospital is liable for the acts and omissions of those persons involved in that care, and which were performed within the scope of their employment with, or as agents or apparent agents of,

Defendant MMC Hospital.

167.    Defendant MMC Hospital, authorized Defendant Dr. Taleon to offer and provide medical services for labor and delivery of Sandra Correa and Santiago, and in a manner which created a reasonable belief on the part of Sandra Correa that these services were being rendered by Defendant MMC Hospital.

168.    In the labor and delivery of Sandra Correa and Santiago, Defendant Dr. Taleon, was an employee, agent or apparent agent of Defendant MMC Hospital, and was at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant MMC Hospital.

169.    Defendant MMC Hospital, authorized Defendant Obi to offer and provide medical services for labor and delivery of Sandra Correa and Santiago, and in a manner which created a reasonable belief on the part of Sandra Correa that these services were being rendered by Defendant MMC Hospital.

170.    In the labor and delivery of Sandra Correa and Santiago, Defendant Obi, was an employee, agent or apparent agent of Defendant MMC Hospital, and was at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant MMC Hospital.

171.    Defendant MMC Hospital, authorized Defendant Vasquez to offer and provide medical services for labor and delivery of Sandra Correa and Santiago, and in a manner which created a reasonable belief on the part of Sandra Correa that these services were being rendered by Defendant MMC Hospital.

172.    In the labor and delivery of Sandra Correa and Santiago, Defendant Vasquez, was an employee, agent or apparent agent of Defendant MMC Hospital, and was at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant MMC Hospital.

173.    In the labor and delivery of Sandra Correa and Santiago, other MMC Hospital nurses and staff involved in that care, were employees, agents or apparent agents of Defendant MMC Hospital, and were at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant MMC Hospital.

174.    In the labor and delivery of Sandra Correa and Santiago, other Defendant MMC Hospital nurses and medical providers were acting within the course and scope of their employment with, or as agents or apparent agents of, Defendant MMC Hospital.

175.    Defendant MMC Hospital is liable to Plaintiffs for its own negligent acts or omissions, and the negligent acts and omissions committed by MMC Hospital's employees, agents and apparent agents.

WHEREFORE Plaintiffs request entry of a judgment for damages against Defendant MMC Hospital, and for:

(a)    physical injuries, pain and suffering endured by Sandra Correa;

(b)    physical injuries, pain and suffering endured by Santiago;

(c)    wrongful death damages of the Estate of Santiago Sebastian Ortiz including:
    i.    expenses for reasonable and necessary medical treatment,
    ii.    funeral and burial expenses, and
    iii.    the value of loss of life of Santiago;

(d)    the negligent infliction of extreme of emotional distress experienced by Plaintiffs;

    (e)    the loss of consortium experienced by Plaintiffs including their loss of society, guidance, companionship and parent-child relations;

    (f)    recoverable court costs;

    (g)    pre- and post-judgment interest; and

    (h)    such other relief the Court deems just.

**COUNT IV**
**NEGLIGENCE OF DEFENDANT LIFEPOINT HEALTH, INC.**
**AND LIFEPOINT RC, INC.**

176.    Plaintiffs hereby incorporate the preceding contentions by reference.

177.    By holding itself out to the public as a hospital providing emergency medical services, and in offering and providing Sandra Correa and Santiago with medical care, healthcare providers, nurse midwife, nursing staff, treatment facilities, specialized medical equipment, and other labor and delivery medical services, Defendant LifePoint Health, Inc. and Defendant LifePoint RC, Inc. (herein collectively "Defendant LifePoint"), owed Plaintiffs Sandra Correa, Santiago Ortiz and Santiago Sebastian Ortiz, a duty and to use ordinary care to provide, staff, employ, credential, supervise, train, and retain well-qualified physicians, nurse midwives, nursing staff, and other healthcare providers, and to provide healthcare facilities, necessary to deliver Santiago for Sandra Correa, necessary to have delivered a healthy and fully viable infant child, and necessary to have prevented the death of Santiago.

178.    By holding itself out to the public as a hospital providing emergency medical services, and in offering and providing Sandra Correa and Santiago with medical care, healthcare providers, nurse midwife, nursing staff, treatment facilities, specialized medical equipment, and other labor and delivery medical services, Defendant LifePoint owed Plaintiffs Sandra Correa,

Santiago Ortiz and Santiago Sebastian Ortiz, a duty and to possess and apply the knowledge and to use the skill and care ordinarily used in reasonably well-operated hospitals under similar circumstances, and giving due consideration to the locality involved.

179.   Defendant LifePoint negligently failed to provide, staff, schedule, employ, credential, supervise, train, and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers operating from and within the MMC Hospital, required by labor and delivery for Sandra Correa, and required to have delivered a healthy and fully viable infant child, and to have prevented Santiago's death.

180.   Defendant LifePoint negligently failed to provide, staff, schedule, employ, credential, supervise, train, and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers required by labor and delivery for Sandra Correa, and required to have prevented Santiago's death.

181.   Defendant LifePoint negligently failed to staff, schedule, employ, credential, supervise, train and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers required by labor and delivery for Sandra Correa and Santiago, and did so in multiple ways including without limitation:

    a.   Defendant LifePoint, by and through its employees, agents or apparent agents, negligently failed to staff MMC Hospital with the qualified and competent health care providers to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

    b.   Defendant LifePoint, by and through its employees, agents or apparent agents, negligently failed to schedule MMC Hospital staffing with qualified and competent health care providers to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

c.   Defendant LifePoint, by and through its employees, agents or apparent agents, negligently failed to schedule MMC Hospital with a qualified, experienced and competent nurse midwife to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

d.   Defendant LifePoint, acting by and through its employees, agents or apparent agents, negligently failed to respond to Ms. Correa's prolonged and delayed second stage of labor and delivery, and to evident fetal distress presented by Santiago from ultrasound monitoring and fetal heartrate;

e.   Defendant LifePoint, by and through its employees, agents or apparent agents, negligently failed to appreciate and timely respond to fetal distress experienced by Santiago and evident by recurrent and prolonged fetal heartrate deceleration patterns evident by ultrasound monitoring;

f.   Defendant LifePoint, by and through its employees, agents or apparent agents, negligently failed to timely advise Sandra Correa for caesarean option to deliver Santiago;

g.   Defendant LifePoint, by and through its employees, agents or apparent agents, negligently failed to timely order a caesarean delivery of Santiago;

h.   Defendant LifePoint, by and through its employees, agents or apparent agents, negligently failed to implement and assure labor and delivery procedures for orders in the administration of Pitocin;

i.   Defendant LifePoint, by and through its employees, agents or apparent agents, negligently caused birthing trauma to Santiago by use of MMC Hospital equipment and a vacuum extraction device and procedure given Santiago's condition and development;

j.   Defendant LifePoint, by and through its employees, agents or apparent agents, negligently failed to anticipate and appreciate complications attendant to Plaintiff Sandra Correa's pregnancy and to the birth of Santiago;

k.   Defendant LifePoint, by and through its employees, agents or apparent agents, negligently caused or contributed to blunt head trauma and occipital calvarium fractures suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

l.   Defendant LifePoint, by and through its employees, agents or apparent agents, negligently acute subarachnoid hemorrhaging suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

m. Defendant LifePoint, by and through its employees, agents or apparent agents, negligently caused subscapular and subgaleal hemorrhaging suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

n. Defendant LifePoint, by and through its employees, agents or apparent agents, negligently caused the blunt extremity traumas, laceration to right axilla, and contusions to the left and right upper extremities suffered by Santiago during birth;

o. Defendant LifePoint, by and through its employees, agents or apparent agents, negligently caused the blunt chest traumas, contusions and abrasions suffered by Santiago during birth; and

p. Defendant LifePoint, by and through its employees, agents or apparent agents, negligently failed to appreciate and respond to Sandra Correa and Santiago to the required standard of care for the evident infant in fetal heartrate distress and a prolonged second stage of labor.

182.    The acts and omissions of Defendant LifePoint, acting through its employees, agents and apparent agents, were a proximate cause of Santiago's personal injuries, pain and suffering, and death, as well as the personal injuries, pain and suffering and emotional trauma suffered by Sandra Correa and Santiago Ortiz as parents, and of Plaintiffs' other damages.

183.    At all times relevant to the labor and delivery of Sandra Correa and Santiago, Defendant LifePoint, exercised control over its employees, agents, apparent agents, physicians, nurse midwives, nurses, technicians and other hospital staff involved in that care.

184.    In the labor and delivery of Sandra Correa and Santiago, the negligent acts or omissions of Defendant LifePoint, its employees, agents, apparent agents, physicians, nurse midwives, nurses, technicians and other hospital staff, all occurred while said persons were acting in the course and scope of their employment with, or as agents or apparent agents of, Defendant LifePoint.

185.     In the labor and delivery of Sandra Correa and Santiago, Defendant LifePoint is liable for the acts and omissions of those persons involved in that care, and which were performed within the scope of their employment with, or as agents or apparent agents of, Defendant LifePoint.

186.     Defendant LifePoint, authorized Defendant Dr. Taleon to offer and provide medical services for labor and delivery of Sandra Correa and Santiago, and in a manner which created a reasonable belief on the part of Sandra Correa that these services were being rendered by Defendant LifePoint.

187.     In the labor and delivery of Sandra Correa and Santiago, Defendant Dr. Taleon, was an employee, agent or apparent agent of Defendant LifePoint, and was at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant LifePoint.

188.     Defendant LifePoint, authorized Defendant Obi to offer and provide medical services for labor and delivery of Sandra Correa and Santiago, and in a manner which created a reasonable belief on the part of Sandra Correa that these services were being rendered by Defendant LifePoint.

189.     In the labor and delivery of Sandra Correa and Santiago, Defendant Obi, was an employee, agent or apparent agent of Defendant LifePoint, and was at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant LifePoint.

190.     Defendant LifePoint, authorized Defendant Vasquez to offer and provide medical services for labor and delivery of Sandra Correa and Santiago, and in a manner which created a

reasonable belief on the part of Sandra Correa that these services were being rendered by Defendant LifePoint.

191.    In the labor and delivery of Sandra Correa and Santiago, Defendant Vasquez, was an employee, agent or apparent agent of Defendant LifePoint, and was at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant LifePoint.

192.    In the labor and delivery of Sandra Correa and Santiago, other MMC Hospital nurses and staff involved in that care, were employees, agents or apparent agents of Defendant LifePoint, and were at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant LifePoint.

193.    In the labor and delivery of Sandra Correa and Santiago, other MMC Hospital nurses and medical providers of Defendant LifePoint, were acting within the course and scope of their employment with, or as agents or apparent agents of, Defendant LifePoint.

194.    Defendant LifePoint is liable to Plaintiffs for the negligent acts or omissions committed by MMC Hospital's employees, agents and apparent agents.

WHEREFORE Plaintiffs request entry of a judgment for damages against Defendant LifePoint, and for:

      (a)    physical injuries, pain and suffering endured by Sandra Correa;
      (b)    physical injuries, pain and suffering endured by Santiago;

      (c)    wrongful death damages of the Estate of Santiago Sebastian Ortiz including:
          i.    expenses for reasonable and necessary medical treatment,
          ii.    funeral and burial expenses, and
          iii.    the value of loss of life of Santiago;

(d)   the negligent infliction of extreme of emotional distress experienced by Plaintiffs;

(e)   the loss of consortium experienced by Plaintiffs including their loss of society, guidance, companionship and parent-child relations;

(f)   recoverable court costs;

(g)   pre- and post-judgment interest; and

(h)   such other relief the Court deems just.

## COUNT V
## NEGLIGENCE OF DEFENDANT LA CLINICA DE FAMILIA, INC.
## AND DEFENDANT FIRST STEP CENTER, INC.

195.    Plaintiffs hereby incorporate the preceding contentions by reference.

196.    In offering and providing Sandra Correa and Santiago Sebastian with medical care, healthcare providers, nurse midwife, nursing staff, treatment facilities, specialized medical equipment, and other labor and delivery medical services, Defendant La Clinica de Familia, Inc. and Defendant First Step Center, Inc. (herein collectively  "Defendant La Clinica, Inc.), owed Plaintiffs Sandra Correa, Santiago Ortiz and Santiago Sebastian, a duty to use ordinary care to provide, staff, employ, credential, supervise, train, and retain well-qualified physicians, nurse midwives, nursing staff, and other healthcare providers, and to provide healthcare facilities, necessary to deliver Santiago for Sandra Correa, necessary to have delivered a healthy and fully viable infant child, and necessary to have prevented the death of Santiago.

197.    In offering and providing Sandra Correa and Santiago Sebastian with medical care, healthcare providers, nurse midwife, nursing staff, treatment facilities, specialized medical equipment, and other labor and delivery medical services, Defendant La Clinica, Inc. owed Plaintiffs Sandra Correa, Santiago Ortiz and Santiago, a duty to possess and apply the knowledge

and to use the skill and care ordinarily used in reasonably well-operated hospitals under similar circumstances, and giving due consideration to the locality involved.

198.    Defendant La Clinica, Inc. negligently failed to provide, staff, schedule, employ, credential, supervise, train, and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers operating from and within the MMC Hospital, required by labor and delivery for Sandra Correa, and required to have delivered a healthy and fully viable infant child, and to have prevented Santiago's death.

199.    Defendant La Clinica, Inc. negligently failed to provide, staff, schedule, employ, credential, supervise, train, and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers required by labor and delivery for Sandra Correa, and required to have prevented Santiago's death.

200.    Defendant La Clinica, Inc. negligently failed to staff, schedule, employ, credential, supervise, train and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers required by labor and delivery for Sandra Correa and Santiago, and did so in multiple ways including without limitation:

   a.   Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently failed to staff MMC Hospital with the qualified and competent health care providers to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

   b.   Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently failed to schedule MMC Hospital staffing with qualified and competent health care providers to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

c.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently failed to schedule MMC Hospital with a qualified, experienced and competent nurse midwife to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

d.  Defendant La Clinica, Inc., acting by and through its employees, agents or apparent agents, negligently failed to respond to Ms. Correa's prolonged and delayed second stage of labor and delivery, and to evident fetal distress presented by Santiago from ultrasound monitoring and fetal heartrate;

e.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently failed to appreciate and timely respond to fetal distress experienced by Santiago and evident by recurrent and prolonged fetal heartrate deceleration patterns evident by ultrasound monitoring;

f.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently failed to timely advise Sandra Correa for a caesarean option to deliver Santiago;

g.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently failed to timely order a caesarean delivery of Santiago;

h.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently failed to implement and assure labor and delivery procedures for orders in the administration of Pitocin;

i.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently caused birthing trauma to Santiago by use of Hospital equipment and a vacuum extraction device procedure given Santiago's condition and development;

j.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently failed to anticipate and appreciate complications attendant to Plaintiff Sandra Correa's pregnancy and to the birth of Santiago;

k.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently caused or contributed to blunt head trauma and occipital calvarium fractures suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

l.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently acute subarachnoid hemorrhaging suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

      m.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently caused subscapular and subgaleal hemorrhaging suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

      n.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently caused the blunt extremity traumas, laceration to right axilla, and contusions to the left and right upper extremities suffered by Santiago during birth;

      o.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently caused the blunt chest traumas, contusions and abrasions suffered by Santiago during birth; and

      p.  Defendant La Clinica, Inc., by and through its employees, agents or apparent agents, negligently failed to appreciate and respond to Sandra Correa and Santiago to the required standard of care for the evident infant in fetal heartrate distress and the prolonged second stage of labor.

201.    The acts and omissions of Defendant La Clinica, Inc., acting through its employees, agents and apparent agents, were a proximate cause of Santiago's personal injuries, pain and suffering, and death, as well as the personal injuries, pain and suffering and emotional trauma suffered by Sandra Correa and Santiago Ortiz as parents, and of Plaintiffs' other damages.

202.    At all times relevant to the labor and delivery of Sandra Correa and Santiago, Defendant La Clinica, Inc., exercised control over its employees, agents, apparent agents, physicians, nurse midwives, nurses, technicians and other hospital staff involved in that care.

203.    In the labor and delivery of Sandra Correa and Santiago, the negligent acts or omissions of Defendant La Clinica, Inc., its employees, agents, apparent agents, physicians, nurse midwives, nurses, technicians and other hospital staff, all occurred while said persons were acting in the course and scope of their employment with, or as agents or apparent agents of, Defendant La Clinica, Inc.

204.     In the labor and delivery of Sandra Correa and Santiago, Defendant La Clinica, Inc. is liable for the acts and omissions of those persons involved in that care, and which were performed within the scope of their employment with, or as agents or apparent agents of, Defendant La Clinica, Inc.

205.     In the labor and delivery of Sandra Correa and Santiago, Defendant Dr. Taleon, was an employee, agent or apparent agent of Defendant La Clinica, Inc., and was at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant La Clinica, Inc.

206.     Defendant La Clinica, Inc., authorized Defendant Dr. Taleon to offer and provide medical services for labor and delivery of Sandra Correa and Santiago, and in a manner which created a reasonable belief on the part of Sandra Correa that these services were being rendered by Defendant La Clinica, Inc.

207.     In the labor and delivery of Sandra Correa and Santiago, Defendant Obi, was an employee, agent or apparent agent of Defendant La Clinica, Inc., and was at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant La Clinica, Inc.

208.     Defendant La Clinica, Inc., authorized Defendant Obi to offer and provide medical services for labor and delivery of Sandra Correa and Santiago, and in a manner which created a reasonable belief on the part of Sandra Correa that these services were being rendered by Defendant La Clinica, Inc.

209.     In the labor and delivery of Sandra Correa and Santiago at MMC Hospital, other physicians, midwives, nurses and other staff involved in that care, were employees, agents or

apparent agents of Defendant La Clinica, Inc., and were at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant La Clinica, Inc.

210.    In the labor and delivery of Sandra Correa and Santiago, other La Clinica, Inc. physicians, midwives, nurses and medical providers were acting within the course and scope of their employment with, or as agents or apparent agents of, Defendant La Clinica, Inc.

211.    Defendant La Clinica, Inc. is liable to Plaintiffs for the negligent acts or omissions committed by Defendant La Clinica, Inc.'s employees, agents and apparent agents.

212.    Alternatively argued, the United States of America is liable to Plaintiffs for the negligent acts or omissions of Defendants La Clinica, Inc. as a Federally Qualified Health Care Center.

WHEREFORE Plaintiffs request entry of a judgment for damages against Defendant La Clinica, Inc., and for:

(a)    physical injuries, pain and suffering endured by Sandra Correa;

(b)    physical injuries, pain and suffering endured by Santiago;

(c)    wrongful death damages of the Estate of Santiago Sebastian Ortiz including:
  i.    expenses for reasonable and necessary medical treatment,
  ii.   funeral and burial expenses, and
  iii.  the value of loss of life of Santiago;

(d)    the negligent infliction of extreme of emotional distress experienced by Plaintiffs;

(e)    the loss of consortium experienced by Plaintiffs including their loss of society, guidance, companionship and parent-child relations;

(f)    recoverable court costs;

(g)    pre- and post-judgment interest; and

(h)    such other relief the Court deems just.

**COUNT VI**
**LIABILITY OF UNITED STATES OF AMERICA**

213.    Plaintiffs hereby incorporate the preceding contentions by reference.

214.    Alternatively argued, in offering and providing Sandra Correa and Santiago Sebastian with medical care, healthcare providers, nurse midwife, nursing staff, treatment facilities, specialized medical equipment, and other labor and delivery medical services, through what Defendants may contend to be a Federally Qualified Health Care Center, Defendant United States of America owed Plaintiffs Sandra Correa, Santiago Ortiz and Santiago Sebastian, a duty to use ordinary care to provide, staff, employ, credential, supervise, train, and retain well-qualified physicians, nurse midwives, nursing staff, and other healthcare providers, and to provide healthcare facilities, necessary to deliver Santiago for Sandra Correa, necessary to have delivered a healthy and fully viable infant child, and necessary to have prevented the death of Santiago.

215.    Alternatively argued, in offering and providing Sandra Correa and Santiago Sebastian with medical care, healthcare providers, nurse midwife, nursing staff, treatment facilities, specialized medical equipment, and other labor and delivery medical services, through what Defendants may contend to be a Federally Qualified Health Care Center, Defendant United States of America owed Plaintiffs Sandra Correa, Santiago Ortiz and Santiago, a duty to possess and apply the knowledge and to use the skill and care ordinarily used in reasonably well-operated hospitals under similar circumstances, and giving due consideration to the locality involved.

216.    Alternatively argued, Defendant United States of America negligently failed to provide, staff, schedule, employ, credential, supervise, train, and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers including those operating

from and within the MMC Hospital, required by labor and delivery for Sandra Correa, and required to have delivered a healthy and fully viable infant child, and to have prevented Santiago's death.

217.   Alternatively argued, Defendant United States of America negligently failed to provide, staff, schedule, employ, credential, supervise, train, and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers required by labor and delivery for Sandra Correa, and required to have prevented Santiago's death.

218.   Alternatively argued, Defendant United States of America negligently failed to staff, schedule, employ, credential, supervise, train and retain the physicians, nurse midwives, nurses, hospital staff and such other healthcare providers required by labor and delivery for Sandra Correa and Santiago, and did so in multiple ways including without limitation:

    a.   Defendant United States of America, by and through its employees, agents or apparent agents, negligently failed to staff MMC Hospital with the qualified and competent health care providers to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

    b.   Defendant United States of America, by and through its employees, agents or apparent agents, negligently failed to schedule MMC Hospital staffing with qualified and competent health care providers to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

    c.   Defendant United States of America, by and through its employees, agents or apparent agents, negligently failed to schedule MMC Hospital with a qualified, experienced and competent nurse midwife to provide necessary labor and delivery services between 7:01 p.m., August 11, 2017, and 6:06 a.m., August 12, 2017, as required by Sandra Correa and Santiago;

    d.   Defendant United States of America, acting by and through its employees, agents or apparent agents, negligently failed to respond to Ms. Correa's prolonged and delayed second stage of labor and delivery, and to evident fetal distress presented by Santiago from ultrasound monitoring and fetal heartrate;

e.  Defendant United States of America, by and through its employees, agents or apparent agents, negligently failed to appreciate and timely respond to fetal distress experienced by Santiago and evident by recurrent and prolonged fetal heartrate deceleration patterns evident by ultrasound monitoring;

f.  Defendant United States of America, by and through its employees, agents or apparent agents, negligently failed to timely advise Sandra Correa for a caesarean option to deliver Santiago;

g.  Defendant United States of America, by and through its employees, agents or apparent agents, negligently failed to timely order a caesarean delivery of Santiago;

h.  Defendant United States of America, by and through its employees, agents or apparent agents, negligently failed to implement and assure labor and delivery procedures for orders in the administration of Pitocin;

i.  Defendant United States of America, by and through its employees, agents or apparent agents, negligently caused birthing trauma to Santiago by use of Hospital equipment and a vacuum extraction device procedure given Santiago's condition and development;

j.  Defendant United States of America, by and through its employees, agents or apparent agents, negligently failed to anticipate and appreciate complications attendant to Plaintiff Sandra Correa's pregnancy and to the birth of Santiago;

k.  Defendant United States of America, by and through its employees, agents or apparent agents, negligently caused or contributed to blunt head trauma and occipital calvarium fractures suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

l.  Defendant United States of America, by and through its employees, agents or apparent agents, negligently acute subarachnoid hemorrhaging suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

m.  Defendant United States of America, by and through its employees, agents or apparent agents, negligently caused subscapular and subgaleal hemorrhaging suffered by Santiago during birth caused by equipment and tools of MMC Hospital;

n.  Defendant United States of America, by and through its employees, agents or apparent  agents, negligently caused the blunt extremity traumas, laceration to

right axilla, and contusions to the left and right upper extremities suffered by
Santiago during birth;

    o.   Defendant United States of America, by and through its employees, agents or
apparent agents, negligently caused the blunt chest traumas, contusions and
abrasions suffered by Santiago during birth; and

    p.   Defendant United States of America, by and through its employees, agents or
apparent agents, negligently failed to appreciate and respond to Sandra Correa
and Santiago to the required standard of care for the evident infant in fetal
heartrate distress and the prolonged second stage of labor.

219.    Alternatively argued, the acts and omissions of Defendant United States of

America, acting through its employees, agents and apparent agents, were a proximate cause of

Santiago's personal injuries, pain and suffering, and death, as well as the personal injuries, pain

and suffering and emotional trauma suffered by Sandra Correa and Santiago Ortiz as parents, and

of Plaintiffs' other damages.

220.    Alternatively argued, and at all times relevant to the labor and delivery of Sandra

Correa and Santiago, Defendant United States of America, exercised control over its employees,

agents, apparent agents, physicians, nurse midwives, nurses, technicians and other hospital staff

involved in that care.

221.    Alternatively argued, in the labor and delivery of Sandra Correa and Santiago, the

negligent acts or omissions of Defendant United States of America, its employees, agents,

apparent agents, physicians, nurse midwives, nurses, technicians and other hospital staff, all

occurred while said persons were acting in the course and scope of their employment with, or as

agents or apparent agents of, Defendant United States of America.

222.    Alternatively argued, in the labor and delivery of Sandra Correa and Santiago,

Defendant United States of America is liable for the acts and omissions of those persons involved

in that care, and which were performed within the scope of their employment with, or as agents or apparent agents of, Defendant United States of America.

223.     Alternatively argued, in the labor and delivery of Sandra Correa and Santiago, Defendant Dr. Taleon, was an employee, agent or apparent agent of Defendant United States of America, and was at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant United States of America.

224.     Alternatively argued, Defendant United States of America authorized Defendant Dr. Taleon to offer and provide medical services for labor and delivery of Sandra Correa and Santiago, and in a manner which created a reasonable belief on the part of Sandra Correa that these services were being rendered by Defendant La Clinica, Inc. or by Defendant Dr. Taleon, or by Defendant MMC Hospital.

225.     Alternatively argued, in the labor and delivery of Sandra Correa and Santiago, Defendant Obi, was an employee, agent or apparent agent of Defendant United States of America, and was at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant La Clinica, Inc.

226.     Alternatively argued, Defendant United States of America authorized Defendant Obi to offer and provide medical services for labor and delivery of Sandra Correa and Santiago, and in a manner which created a reasonable belief on the part of Sandra Correa that these services were being rendered by Defendant La Clinica, Inc. or by Defendant Obi or by Defendant MMC Hospital

227.     Alternatively argued, in the labor and delivery of Sandra Correa and Santiago at MMC Hospital, other physicians, midwives, nurses and other staff involved in that care, were

employees, agents or apparent agents of Defendant United States of America, and were at all relevant times acting within the course and scope of that employment, agency, or apparent agency with Defendant United States of America.

228.    In the labor and delivery of Sandra Correa and Santiago, other La Clinica, Inc. physicians, midwives, nurses and medical providers were acting within the course and scope of their employment with, or as agents or apparent agents of, Defendant United States of America.

229.    Alternatively argued, Defendant United States of America is liable to Plaintiffs for the negligent acts or omissions committed by Defendant La Clinica, Inc.'s employees, agents and apparent agents.

230.    Alternatively argued, the United States of America is liable to Plaintiffs for the negligent acts or omissions controlled by Defendants La Clinica, Inc.'s employees, agents and apparent agents.

WHEREFORE Plaintiffs request entry of a judgment for damages against Defendant United States of America and for:

(a)    physical injuries, pain and suffering endured by Sandra Correa;

(b)    physical injuries, pain and suffering endured by Santiago;

(c)    wrongful death damages of the Estate of Santiago Sebastian Ortiz including:
    i.    expenses for reasonable and necessary medical treatment,
    ii.    funeral and burial expenses, and
    iii.    the value of loss of life of Santiago;

(d)    the negligent infliction of extreme of emotional distress experienced by Plaintiffs;

(e)    the loss of consortium experienced by Plaintiffs including their loss of society, guidance, companionship and parent-child relations;

(f)    recoverable court costs;

(g)    pre- and post-judgment interest; and

(h)    such other relief the Court deems just.

### COUNT VII
### NEGLIGENCE OF DEFENDANT LINDA VASQUEZ, RN

231.    Plaintiffs hereby incorporate the preceding contentions by reference.

232.    In August of 2017, Defendant Linda Vasquez, was employed at MMC Hospital,

where she held herself out to Plaintiffs as possessing the skill and qualifications of a registered

nurse to assist in the labor and delivery required by Sandra Correa and Santiago.

233.    Defendant Vasquez owed Plaintiffs a duty to possess and apply the knowledge,

skill and care ordinarily used by a reasonably well-qualified registered nurse in labor and delivery

procedures, and under the circumstances present and the locality involved.

234.    Defendant Vasquez negligently failed to apply the ordinary knowledge, skill and

care required of a registered nurse in the labor and delivery of Santiago and for Sandra Correa,

and did so in multiple ways including without limitation:

a)    Defendant Vasquez negligently failed to appreciate and respond to Ms. Correa's
prolonged and delayed second stage of labor, and the non-progression of labor and
delivery, evident from fetal ultrasound monitoring;

b)    Defendant Vasquez negligently failed to appreciate and respond to evident
complications attendant to the progression and lack of progression in Sandra
Correa's delivery of Santiago;

c)    Defendant Vasquez negligently failed to appreciate, assess, evaluate, respond to
and treat Sandra Correa, and Santiago, to the required standard of care;

d)    Defendant Vasquez negligently failed to timely request assistance from an
obstetrician or other qualified physician specialist;

e) Defendant Vasquez negligently failed to timely advise Sandra Correa of the need for an obstetrician or other qualified physician specialist, and needed for Sandra Correa and Santiago to receive proper treatment; and

f) Defendant Vasquez negligently failed to administer, continue and monitor the Pitocin received by Sandra Correa during progression of her labor.

235. The negligent acts and omissions of Defendant Vasquez were a cause of physical injuries, and pain and suffering, experienced by Santiago during birth.

236. The negligent acts and omissions of Defendant Vasquez were a cause of Santiago's death.

237. The negligent acts and omissions of Defendant Vasquez were a cause of the loss of consortium experienced by Plaintiffs Sandra Correa, and by Santiago Ortiz, as the result of their son Santiago's death.

238. The negligent acts and omissions of Defendant Vasquez were a cause of the extreme emotional distress experienced by Plaintiffs Sandra Correa and Santiago Ortiz during the delivery of their son Santiago.

239. At all times relevant to her care of Sandra Correa and the delivery of Santiago, Defendant Vasquez was acting in the course and scope of her employment with, or as an agent or apparent agent of, Defendant MMC Hospital, and for which this Defendant is vicariously liable.

240. At all times relevant to her care of Sandra Correa and the delivery of Santiago, Defendant Vasquez was acting in the course and scope of her employment with, or as an agent or apparent agent of, Defendant LifePoint Health, Inc., and for which this Defendant is vicariously liable.

241. At all times relevant to her care of Sandra Correa and the delivery of Santiago, Defendant Vasquez was acting in the course and scope of her employment with, or as an agent or

apparent agent of, Defendant LifePoint RC, Inc., and for which this Defendant is vicariously liable.

WHEREFORE Plaintiffs request entry of a judgment for damages against Defendant Linda Vasquez, RN, and for:

      (a)  physical injuries, pain and suffering endured by Sandra Correa;

      (b)  physical injuries, pain and suffering endured by Santiago;

      (c)  wrongful death damages of the Estate of Santiago Sebastian Ortiz including:
          i.   expenses for reasonable and necessary medical treatment,
         ii.   funeral and burial expenses, and
       iii.   the value of loss of life of Santiago;

      (d)  the negligent infliction of extreme emotional distress experienced by Plaintiffs;

      (e)  the loss of consortium experienced by Plaintiffs including their loss of society, guidance, companionship and parent-child relations;

      (f)  recoverable court costs;

      (g)  pre- and post-judgment interest; and

      (h)  such other relief the Court deems just.

## COUNT VIII
## PLAINTIFFS SANDRA CORREA AND SANTIAGO ORTIZ
## LOSS OF CONSORTIUM

242.    Plaintiffs hereby incorporate the preceding contentions by reference.

243.    Plaintiffs Sandra Correa and Santiago Ortiz are the parents of Santiago Sebastian Ortiz, who died during delivery and birth on August 12, 2017, at Defendant MMC Hospital.

244.    As a direct and proximate result of the Defendants' negligence, Plaintiffs Sandra Correa and Santiago Ortiz have suffered emotional distress due to the loss of society with, and companionship of, their child in the past, and for the remainder of their lives.

245.     As a direct and proximate result of the Defendants' negligence, Plaintiffs Sandra Correa and Santiago Ortiz have been, and forever will be, deprived of the companionship of their deceased child, Santiago, and have suffered and will suffer in the future emotional distress from their loss of consortium.

WHEREFORE Plaintiffs Sandra Correa and Santiago Ortiz, individually, request entry of a judgment for damages against Defendants for Plaintiffs' loss of consortium, including their mental anguish and emotional distress, and for such other relief as the Court deems just and proper.

## COUNT IX
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS TO BYSTANDERS SANDRA CORREA AND SANTIAGO ORTIZ

246.     Plaintiffs hereby incorporate the preceding contentions by reference.

247.     Sandra Correa and Santiago Ortiz had a close family relationship to their infant son Santiago.

248.     During efforts to deliver their son Santiago including use of a vacuum extraction device to pull Santiago's head, Plaintiffs Sandra Correa and Santiago Ortiz suffered severe emotional distress, and will continue to suffer severe emotional distress in their future.

249.     As a direct and proximate result of the Defendants' negligence, and seeing and experiencing the injuries to Santiago suffered during his birth, Plaintiffs Sandra Correa and Santiago Ortiz have suffered severe emotional distress as the result of their son's physical injuries and death.  Their emotional distress is of such an intensity and duration that no ordinary person should be expected to tolerate that distress.

WHEREFORE Plaintiffs Sandra Correa and Santiago Ortiz request entry of a judgment for damages against Defendants for negligent infliction of emotional distress, and the severe emotional distress they have suffered together, and for such other relief as the Court deems just and proper.

### SANTIAGO SEBASTIAN ORTIZ ESTATE'S WRONGFUL DEATH DAMAGES

250.    Plaintiffs hereby incorporate the preceding contentions by reference.

251.    As a direct result of the negligent acts and omissions of Defendants described herein, the Estate of Santiago Sebastian Ortiz is entitled to those damages established by the New Mexico Wrongful Death Act, including but not limited to:

a)    reasonable expenses of necessary medical care and treatment;

b)    funeral and burial expenses;

c)    value of Santiago 's loss of life, and apart from  earning capacity;

d)    consideration of mitigating or aggravating circumstances attending the wrongful act, negligence and death;

e)    loss to beneficiaries of other expected benefits that have a monetary value;

f)    loss of enjoyment of life; and

g)    such other damages contemplated by law as determined by a jury.

WHEREFORE, the Estate of Santiago Sebastian Ortiz requests entry of judgment for those damages recoverable pursuant to New Mexico Wrongful Death Act, and for recoverable costs, pre- and post-judgment interest, and such other relief the Court deems just.

## **TWELVE-PERSON JURY DEMAND**

Plaintiffs also respectfully request trial by a twelve-person jury for all issues and damages.

The required jury fee is tendered with the filing of Plaintiffs' Complaint.

Respectfully submitted,

CERVANTES SCHERR LEGATE, LC

*/s/ Joseph Cervantes*
Joseph Cervantes
Attorneys for Plaintiffs
901 E. University Avenue, Ste. 965-L
Las Cruces, New Mexico  88001
(575) 526-5600; Fax: (575) 523-9317